UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
RITA A. LoRUSSO,

                      Plaintiff,                  **MEMORANDUM & ORDER**
                                                                         08 CV 3467 (RJD)

-against-

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                      Defendant.
----------------------------------------------------------------X

DEARIE, Chief Judge.

      Pursuant to 42 U.S.C. § 405(g), plaintiff Rita LoRusso moves for judgment on the pleadings seeking reversal of the decision of the Commissioner of Social Security (the "Commissioner") denying her disability benefits, and remand solely for the calculation of benefits as of April 14, 2000, her alleged onset date of disability. The Commissioner also moves for judgment on the pleadings.

      After reviewing the record evidence and the parties' submissions, the Court concludes that (i) the Commissioner did not apply the correct legal standards in denying LoRusso disability benefits; and (ii) the Commissioner's finding that LoRusso retains the ability to perform sedentary work requiring the occasional use of her hands is not supported by substantial evidence. Accordingly, the Commissioner's motion is denied.

      At the same time, the Court cannot say that the record evidence persuasively establishes that LoRusso is disabled. Accordingly, LoRusso's motion for remand solely for the calculation of benefits is also denied. The matter is remanded to the Commissioner for further proceedings consistent with this opinion.

BACKGROUND

The evidence is summarized in the Court's Memorandum and Order dated August 26, 2005, and in the parties' briefs. Familiarity is assumed. Briefly, LoRusso, a fifty-seven year old woman, completed high school, pursued some college courses, and completed a medical records and coding continuing education program at Queens College. (Tr. 156.) From 1985 to 1993, she worked as an accounting clerk, a bookkeeper, a secretary, and a receptionist. (Tr. 151.) In 1994, she began working as a hospital medical billing clerk. (Tr. 151.) She worked in that capacity until April 2000 when she had the first of four surgeries to relieve her carpal tunnel syndrome. (Tr. 150.) She has not worked since.

LoRusso filed for disability benefits on March 15, 2001, alleging disability stemming from carpal tunnel syndrome as of April 14, 2000. Her date last insured was March 31, 2006, when she was 53 years old. (Tr. 144.)

In a written decision dated August 8, 2002, Administrative Law Judge Martin Cahn denied LoRusso's application for disability benefits. ALJ Cahn concluded that although LoRusso underwent surgery to relieve pain associated with her carpal tunnel syndrome in her right hand in April 2000 and in her left hand in June 2000, she maintained the residual functional capacity to perform the full range of light work, including her past relevant work as a medical billing clerk. In so holding, ALJ Cahn gave "some weight," but not controlling weight, to the opinions of LoRusso's treating physicians that she was disabled, but gave "significant weight" to the opinions of her consulting physicians that she was not disabled. ALJ Cahn concluded that these latter assessments were supported by medical evidence that suggested LoRusso's carpal tunnel had resolved post-surgery and that her hand functions were within normal limits. ALJ Cahn also discounted LoRusso's complaints of pain, finding that her symptoms were not

corroborated by the objective medical evidence that indicated LoRusso's "condition essentially resolved." The Appeals Council denied LoRusso's request for review of ALJ Cahn's decision on December 23, 2003.

LoRusso filed suit in this Court challenging the denial of benefits. In its Memorandum and Order dated August 26, 2005, the Court concluded that based on the medical evidence available to ALJ Cahn at the time, he had not erred in discounting the opinions of LoRusso's treating physicians and in giving significant weight to the opinions of her consulting physicians. The Court, however, vacated ALJ Cahn's decision and remanded the matter with directions for the ALJ to consider whether new evidence arising subsequent to his decision could lead him to give significant, if not controlling weight to the opinions of LoRusso's treating physicians.

Specifically, the Court directed ALJ Cahn to consider three new pieces of medical evidence. First, he was directed to consider the medical reports of LoRusso's treating physicians, which indicated that her carpal tunnel syndrome had worsened. Second, given the importance that ALJ Cahn placed on the results of a November 2000 EMG/NCV test in affording significant weight to the opinions of LoRusso's consulting physicians, the Court directed the ALJ to consider whether the results of a July 2, 2003 EMG/NCV test, which indicated that LoRusso's carpal tunnel syndrome had recurred, suggested that LoRusso had an impairment substantially more severe than the consulting physicians previously diagnosed. Finally, the Court directed ALJ Cahn to consider whether LoRusso's second surgery on her right wrist in November 2003 and a second surgery on her left wrist in July 2004 rendered her complaints of pain more credible.

On remand, LoRusso was again denied benefits. In an opinion dated June 20, 2007, ALJ Hazel Strauss acknowledged that the July 2003 EMG/NCV confirmed that LoRusso's carpal

3

tunnel syndrome had recurred and had not resolved. She concluded that LoRusso's bilateral carpal tunnel syndrome was a severe impairment that rendered her unable to perform her past relevant work as a medical billing clerk, accounting clerk or bookkeeper.

ALJ Strauss concluded, however, that LoRusso was not disabled because her carpal tunnel did not prevent her from performing "a range of sedentary work or work that involves lifting 10 pounds occasionally, sitting 6 hours, standing and walking 2 hours out of an 8 hour day with no repetitive use of the hands, only occasional use." (Tr. 36.) In arriving at LoRusso's residual functional capacity, ALJ Strauss seemingly discounted the opinions of LoRusso's treating physicians and, like ALJ Cahn, gave "significant weight" to the opinions of two consulting physicians who each examined LoRusso only once, 16 months prior to her July 2003 EMG/NCV test, 20 months prior to the second surgery on her right wrist, and 28 months prior to the second surgery on her lift wrist. The Appeals Council again denied review and on June 23, 2008, ALJ Strauss's decision became the final decision of the Commissioner. LoRusso filed this second action on August 25, 2008.

## DISCUSSION

I. Standard

"Disability" within the meaning of the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any

4

other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Court "may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Burgess v. Astrue, 537 F.3d 117, 127 (2d Cir. 2008) (quoting Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000), quoting 42 U.S.C. § 405(g) (internal quotation marks omitted)). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted)).

Despite the "apparently deferential standards of review" to be afforded the Commissioner's decisions, they "have proven surprisingly vulnerable to judicial reversal." Tornatore v. Barnhart, 2006 WL 3714649, at *2 (S.D.N.Y. Dec. 12, 2006) (internal citation omitted). "This vulnerability results primarily from the Commissioner's creation – and the courts' subsequent enforcement – of various procedural obligations to which ALJs must scrupulously adhere." Id. (internal citation omitted and quotation marks omitted). These requirements "greatly assist[] [a court's] review of the Commissioner's decision and 'let[] claimants understand the disposition of their cases.'" Halloran, 362 F.3d at 33 (quoting Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999)). The "failure to adhere to those obligations is a legal error warranting reversal of the ALJ's decision." Tornatore, 2006 WL 3714649, at *2 (internal citation and quotation marks omitted).

Here, remand is warranted because (i) ALJ Strauss did not apply the correct legal standards in concluding that LoRusso was disabled; and (ii) ALJ Strauss's finding that LoRusso

5

had the residual functional capacity to perform a range of sedentary work requiring the occasional use of her hands is not supported by substantial evidence in the record.

II. Legal Errors

   A. *Treating Physician Rule*

The Social Security regulations provide that a "treating physician's report is generally given more weight than other reports and that a treating physician's opinion will be controlling if it is 'well-supported by medically acceptable [evidence] and is not inconsistent with the other substantial evidence in [the] record.'" Kamerling v. Massanari, 295 F.3d 206, 209 n.5 (2d Cir. 2002) (quoting 20 C.F.R. § 404.1527(d)(2)). If the ALJ decides not to give the treating physician's opinion controlling weight, the ALJ "must consider, *inter alia*, the '[l]ength of the treatment relationship and the frequency of examination'; the '[n]ature and extent of the treatment relationship'; the 'relevant evidence . . ., particularly medical signs and laboratory findings,' supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues" in determining the amount of weight the treating physician's opinion is to be given. Burgess, 537 F.3d at 129 (quoting 20 C.F.R. § 404.1527(d)(2)(i)-(ii),(3)-(5)). After considering these factors, the ALJ must "comprehensively set forth [good] reasons for the weight assigned to a treating physician's opinion." Id. (quoting Halloran, 362 F.3d at 33).

ALJ Strauss did not give controlling weight to the opinions of LoRusso's treating physicians, Drs. Scilaris, Kaplan, Vosough and Kyriakides.[1] She fails to provide any explanation

---

[1] ALJ Strauss did not state which of LoRusso's physicians, other than Dr. Scilaris, were entitled to treating physician status. In his initial decision, ALJ Cahn identified Drs. Kaplan, Vosough and Kyriakides as treating physicians and ALJ Strauss reiterated in her decision that LoRusso

6

for not doing so and she does not indicate the amount of weight she ultimately assigned them. These omissions warrant remand. See Halloran, 362 F.3d 28 at 33 ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion.").

ALJ Strauss's failure to provide the requisite good reasons is particularly troubling given that the Court remanded the matter in August 2005 directing the ALJ to consider whether LoRusso's updated medical history, including the July 2003 EMG/NCV test and her second round of surgeries, would impact ALJ Cahn's finding that the opinions were not entitled to controlling weight. That ALJ Strauss did not offer any discussion of this critical issue frustrated the entire point of the remand. Accordingly, whichever ALJ may handle this case on remand, he or she is directed to expressly address whether, in light of the medical evidence arising subsequent to ALJ Cahn's initial decision, the opinions of LoRusso's treating physicians should receive more weight than assigned by ALJ Cahn. Byrd v. Appel, 2000 WL 1100336, at *4 (E.D.N.Y. Aug. 2, 2000) ("Therefore, it is for the ALJ, on remand, to assess all of the medical evidence and specifically articulate what, if any, weight should be properly assigned to the treating physician's opinion and fully explain the reasons upon which he relies.").

B.  *Complaints of pain*

The Second Circuit "has long held that the subjective element of pain is an important factor to be considered in determining disability." Perez v. Astrue, 2009 WL 2496585, at *10

---

was "under their care" (Tr. 39.) The Court therefore assumes for the purposes of this opinion that they are entitled to treating physician status.

7

(E.D.N.Y. Aug. 14, 2009) (quoting Mimms v. Heckler, 750 F.2d 180, 185 (2d Cir. 1984)). When the evidence demonstrates a medically determinable impairment, "subjective pain may serve as the basis for establishing disability, even if such pain is unaccompanied by positive clinical findings or other objective medical evidence[.]" Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979) (internal citations and quotation marks omitted). Here, ALJ Strauss discounted LoRusso's "statements concerning the intensity, persistence and limiting effects of these symptoms," finding that they were "not entirely credible." (Tr. 43.)[2]

"An ALJ has the discretion to evaluate the credibility of a claimant and to arrive at an independent judgment . . . regarding the true extent of the pain alleged by the claimant." Perez, 2009 WL 2496585, at *10 (quoting Mimms, 750 F.2d at 185). However, when an ALJ rejects a claimant's subjective complaints of pain, the ALJ must state her reason(s) for doing so with "explicit[] and specific[]" references to the record so that the district court "may conduct a plenary review of the record." Id. "The absence of an explanation leaves this court with no basis upon which to determine whether the appropriate legal standards were applied, nor can it evaluate whether the ALJ considered the entire evidentiary record." Rodriguez v. Astrue, 2009 WL 637154, at *31 (S.D.N.Y. Mar. 9, 2009) (internal citations and quotation marks omitted).

---

[2] LoRusso testified at her hearing before ALJ Strauss that she suffers significant pain as a result of her carpal tunnel and that on a scale of one to ten, the pain is a ten. She complained of burning, tingling and weakness in her hands that leads her to continually drop things, including dishes and cups. She cannot cook for herself because she cannot chop or cut food. Nor can she sweep, mop, shop, or wash dishes. She has difficulty turning doorknobs and buttoning her clothing. From 2000 to 2005, she testified that the most she could lift with her right, dominant hand was a half-gallon of milk, and presently the most she can lift is less than a pound. The most she can currently lift with her left hand is five pounds. She also testified that she has undergone physical therapy for the previous six years for treatment consisting of stretching and massaging of the hands, wrists and arms. She claimed that the therapy provides only temporary relief.

8

While ALJ Strauss stated that LoRusso's statements concerning her pain were not entirely credible, she did not elaborate or explain. Her failure to do so "fatally undermines [her] argument that there is substantial evidence adequate to support h[er] conclusion that claimant is not under a disability" and remand is therefore warranted. See Valerio v. Commissioner of Social Security, 2009 WL 2424211, at *16 (E.D.N.Y Aug. 6, 2009) (quoting Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 2009); Cabrera v. Astrue, 2007 WL 2706276, at *9 (S.D.N.Y. Sept. 18, 2007) ("Rather than simply dismiss such claims as incredible, the ALJ must explain his assessment of the plaintiff's testimony.").

The Commissioner offers several reasons why ALJ Strauss could have "reasonably found that Plaintiff's assertions were not credible to the extent she alleged." (Com. Br. at 19.) To be sure, the reasons advanced by the Commissioner may very well include some of the reasons contemplated by ALJ Strauss in discrediting LoRusso's testimony. Credibility determinations, however, are to be made by the ALJ in the first instance and rationales offered by the Commissioner post-hoc in an attempt to plug the holes in the ALJ's decision are not permissible. See Collado v. Astrue, 2009 WL 2778664, at *16 (S.D.N.Y. Aug. 31, 2009) (citing Snell, 177 F.3d at 134).

Again, the Court notes that ALJ Strauss's failure to follow the Court's explicit instructions in its 2005 remand order to consider whether LoRusso's second round of surgeries made her complaints of pain credible rendered remand unproductive. To be clear, if on remand the ALJ discounts LoRusso's complaints of pain, he or she is to expressly address the impact of LoRusso's second round of surgeries on her credibility determination. The ALJ is also directed to consider whether LoRusso's employment history lends credibility to her claims of pain. See Rosier v. Astrue, 2009 WL 2986610, at *3 (W.D.N.Y. Sept. 15, 2009) (ALJ's failure to consider

a claimant's work history in evaluating claimant's credibility concerning symptoms is "contrary to the law in this circuit and the SSA's rulings" and directing the ALJ to consider claimant's work history on remand) (internal citations and quotation marks omitted).

III. Substantial Evidence

The Court also finds that ALJ Strauss's finding that LoRusso had the residual functional capacity to perform a range of sedentary work that involves lifting ten pounds occasionally, sitting for six hours, standing and walking for two hours out of an eight hour workday with no repetitive use of her hands, only occasional use, is not supported by substantial evidence in the record.[3]

*A.    Consulting Physicians*

In arriving at LoRusso's residual functional capacity, ALJ Strauss gave significant weight to the opinions of two consulting physicians, Drs. Raymond Kurnzer and Robert Karlan. Dr. Kurzner examined LoRusso on March 1, 2002. He concluded that LoRusso had fully recovered from her carpal tunnel syndrome and diagnosed her as postoperative, bilateral volar carpal tunnel, resolved. He opined that she was not disabled and could return to work that day, and that she no longer needed physical therapy because she had reached maximum medical improvement. Dr. Kurzner opined that LoRusso could frequently lift or carry up to 20 pounds, and that her impairment did not affect her ability to push, pull, sit, stand or walk. He further opined that her ability to reach, handle, finger or feel was not affected.

---

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." Gonzalez v. Commissioner of Social Sec., 2009 WL 803121, at *10 (E.D.N.Y. Mar. 25, 2009) (citing 20 C.F.R. 404.1567(a)).

Dr. Karlan, a neurologist, examined LoRusso a few days later on March 6, 2002. He found that there was decreased pin in a glove distribution to the forearm several inches above the wrist in both hands, but no atrophy in the hands or thumbs. Dr. Karlan opined that LoRusso was capable of lifting up to 20 pounds occasionally and up to ten pounds frequently. He opined that her condition limited her ability to reach, handle, finger or feel and that she could only do these manipulative functions occasionally. The impairment did not affect her ability to sit, stand, reach, walk, push or pull. He opined that there was no clinical evidence of median nerve involvement and that it was not clear whether LoRusso's hand sensory complaints had an organic basis. From a clinical point of view he was unable to make a diagnosis of neurological disease and he was "suspicious that carpal tunnel does not truly exist." In his remarkable opinion, LoRusso only "thinks she cannot use her hands."

The Court finds that ALJ Strauss's decision to give these opinions significant weight is not supported by substantial evidence in the record. To be sure, the Court recognizes that it concluded in its prior decision that ALJ Cahn had not erred in assigning significant weight to Drs. Kurzner's and Karlan's opinions. But the Court noted that its decision was based on its review of the evidence before ALJ Cahn at the time he prepared his written decision and that given LoRusso's tests, surgeries and treatment that occurred subsequent to ALJ Cahn's decision, it was an open question as to whether those opinions were still entitled to significant weight.

Based on its review of the complete medical record, the Court is surprised (to say the least) that ALJ Strauss continued to assign any weight, let alone significant weight, to Drs. Kurzner's and Karlan's opinions. Each examined LoRusso just once, and only a few days apart in March 2002, nearly 16 months before LoRusso's second EMG/NCV in July 2003, 20 months before her second surgery on her right wrist, and 27 months before her second surgery on her left

wrist. That they examined LoRusso so far in advance of her second EMG/NCV and second round of surgeries, which ALJ Strauss concedes confirmed the re-occurrence of carpal tunnel, seriously undermines ALJ Strauss's conclusion that their opinions are entitled to significant weight. See Burgess v. Astrue, 537 F.3d 117, 132 (2d. Cir. 2008) (opinion of consultative physician did not constitute substantial evidence of disability where physician failed to review MRI evidence); Diaz v. Astrue, 2009 WL 2601316, at *4 (E.D.N.Y Aug. 24, 2009) (opinion of consultative physician did not constitute substantial evidence of disability where plaintiff's condition worsened after one-time consultative exam). Indeed, given that ALJ Strauss ultimately concluded that LoRusso was disabled from her prior relevant work as a clerk because her carpal tunnel prevented her from using her hands repetitively, the Court is puzzled by ALJ Strauss's assignment of significant weight to the opinions of two physicians who concluded that LoRusso's carpal tunnel had resolved.

*B.     Dr. Scilaris's November 2006 Opinion*

ALJ Strauss also erred in concluding that Dr. Scilaris's November 2006 opinion that LoRusso "was disabled from her previous keyboard duties and work which she was using repetitive activity" supported her "conclusion that [LoRusso] was capable of performing sedentary work with limitation involving only occasional use of both hands." (Tr. 43.) That Dr. Scilaris concluded that LoRusso could not use her hands repetitively does not support a finding that LoRusso could use her hands occasionally. To be sure, an individual may be unable to use her hands repetitively, but may be able to do so occasionally. But it certainly is not always the case and Dr. Scilaris's November 2006 report does not provide any basis for ALJ Strauss to infer that it is the case here. In fact, Dr. Scilaris noted in the same report that LoRusso presented with

marked pain, tenderness, thenar atrophy, and positive Phelan's and Tinel's tests, and he opined that she continues to have a "marked disability" and is unable to work.[4]

Given that Dr. Scilaris performed LoRusso's second set of surgeries to relieve her carpal tunnel and was her treating physician from the date of those surgeries through her date last insured, his opinion is especially valuable in determining whether LoRusso was disabled. Accordingly, ALJ Strauss should have attempted to obtain a residual functional capacity assessment from Dr. Scilaris that specifically addressed whether LoRusso could perform sedentary work requiring the occasional use of her hands. See Lawton v. Astrue, 2009 WL 2867905, at *4 (N.D.N.Y. Sept. 2, 2009) (an ALJ's duty to develop the record "includes an affirmative obligation to make reasonable efforts to obtain from a claimant's treating physician any necessary reports including an assessment of his or her RFC") (citing 20 C.F.R. § 404.1512(e), other internal citations omitted)). It is unclear from the record whether ALJ Strauss did and to the extent she did not, the Court strongly suggests she do so on remand. See Hunt v. Astrue, 2009 WL 5067543, at *5 (N.D.N.Y. Dec. 16, 2009) (directing ALJ to consider whether treating physician should be contacted to resolve ambiguities in physician's medical source statement).

---

[4] At most, Dr. Scilaris's report is ambiguous regarding LoRusso's ability to perform sedentary work requiring the occasional use of her hands. In fact, because Dr. Scilaris was treating LoRusso in connection with her claim for New York State workers' compensation, it is very possible that Dr. Scilaris was not focused on whether LoRusso was capable of work that required her to use her hands occasionally. The Court's conclusion should come as no surprise to the Commissioner: in a separate part of her decision, ALJ Strauss concluded that the workers' compensation board's finding that LoRusso was disabled did not compel a finding of disability for Social Security purposes because workers' compensation law only requires a finding that LoRusso cannot perform her past relevant work.

13

IV. Disposition

Pursuant to 42 U.S.C. § 405(g), the Court has the authority to affirm, reverse, or modify a final decision of the Commissioner with or without remand. Because ALJ Strauss misapplied several legal standards and because her finding as to LoRusso's residual capacity function is not supported by substantial evidence in the record, remand is warranted. The only issue remaining is whether the matter should be remanded to permit the Commissioner one last opportunity to determine whether LoRusso is disabled or whether the Court should remand solely for the calculation of disability benefits as of LoRusso's alleged onset date of disability.

"Remand is particularly appropriate where [the court is] 'unable to fathom the ALJ's rationale in relation to the evidence in the record' without 'further findings or clearer explanation for the decision.'" Pratts v. Charter, 94 F.3d 34, 39 (2d Cir. 1996) (quoting Berry v. Schweiker, 675 F.2d 464, 469 (2d Cir. 1982)). By contrast, courts will only reverse and remand for a determination of benefits where there is "persuasive evidence of disability and no purpose would be served by further development of the record." McCall v. Astrue, 2008 WL 5378121, at *22 (E.D.N.Y. Dec. 23, 2008) (citing Curry v. Apfel, 209 F.3d 117, 124 (2d Cir. 2000)).

After reviewing the record, the Court cannot say that the evidence persuasively establishes that LoRusso is disabled. Therefore, while it is regrettable that after all this time this matter must be returned to the Commissioner for a third review, there is no substitute for an informed decision. Accordingly, the case is remanded to the Commissioner for further proceedings consistent with this opinion.

14

## CONCLUSION

For the reasons set forth above, the parties' motions are denied. The case is remanded to the Commissioner for further proceedings consistent with this opinion. Because LoRusso filed her initial application for disability benefits in 2001, the Court urges the Commissioner to reach a decision on her claim expeditiously.

**SO ORDERED.**

Dated: Brooklyn, New York
      March 2/, 2010

s/ Judge Raymond J. Dearie

RAYMOND J. DEARIE
United States District Judge